Skype Tech, Peer Communications Corporation v. Skype Technologies May I proceed, Your Honor? May I please report Mike Cook here on behalf of Peer Communications Corporation. The central issue in this case is the construction of direct communications. Counsel, isn't that really the only issue? I mean, as I understand your position, you want to broaden the interpretation of registry and resource. Well, if this were an infringement case, that might be a sensible, doable approach. But given that this is an anticipation case, you know, it's kind of like being a little bit pregnant. You are or you aren't, right? So if we broaden registry and resource, you're just more anticipated. Well, Your Honor, I would concede that if the court decides against us on direct communications when the case is over. But no, but even if we... Yeah, okay, so we decide against you when the case is over, but I just don't see how registry and resource are appealed to us. It's simple. For this reason and this reason only, Your Honor. This court has plenary power on the no-go basis to construe any claim term. But you want us to construe it. You're advocating for a broader construction. That would not help you in this appeal. That's correct. Okay. That's correct. That's correct. But in the course of that, if the court decides on its own how to construe these particular terms, we didn't want it on the record that we agree with those terms somehow. But back to the main issue. On direct communications, when you really boil it all down to briefs, when it really comes up to a head, the real question on what does direct communication mean comes down to this. On one hand, you have a situation where there's a device, a central server, between one communicant, A, and a second communicant, B, on a particular path in between the two. That's one scenario. The second scenario is, and did the inventors, did the invention seek to have communication without that type of server? Or, on the other hand, did the invention, did the inventors also intend to have communication without just that kind of server on the path? In other words, could it have, were they intending to exclude communications where there was communication with servers not on the path but someplace else? Now, what happened, it really comes down to one of those two situations. Is it just the one, or do we try to exclude both? The district court's opinion says, well, it's just the one. This invention only excludes that type of communication. Scott agrees. Our position is that, no, the invention was broader than that, and we were intending to exclude both types, or the other type of server. Not one just on the path, but where there could be a centralized server off the path. What's the registry, then? Because the registry, as your patent, in column 5, line 53, explains, as I understand it, that the registry is a resource that contains, among other things, the IP address and things like that, so that the computer, one computer, can reach out to the registry, get the IP address for the other person, and then communicate with them through it to here. But there still is this intermediary. It's not intermediary in the sense of between the two peer-to-peer, but it's an outside registry where you're going to obtain that information. Correct. I mean, the registry is simply a list of our position. It's a list that has addresses on it. And the key to know whether or not this is limited to one particular type of communication or not, I guess in the most, let me put it this way, the most clear way to refute that this registry is not just limited to on the path, but also includes, excuse me, this device, this central service intermediary thing is not just on the path, but also off the path, is this. The Skype says, nowhere did you say in the prosecution history, in the spec, anywhere, that you were trying to say something more than on the path. But if you look at the Goldfinger reference, the Goldfinger- Isn't the registry just a type of central server located outside the communication path? No. The registry- No? Well, a registry could be. A registry could be. But as described in your spec, it contains the IP addresses. How is that not a form of central server just located outside the direct communication path? Because the central server, the difference is that you have a central server that's on the network access device, on the computer. That's what makes it distributed. The registry is on particular devices. As opposed to the central server concept, which has, to use Skype's definition, a centralized, a dedicated computer that provides a centralized address directory service to a client. That's not what we have here. What we have is a distributed system where we have addresses that are actually on each individual peer in a peer-to-peer model, not a client-server model. So you have the addresses on different peers located. And that's why it's not some sort of just centralized server located someplace. But back to my point, the reason the court erred is it said it's just limited to this along the path. In other words, the trial court definition interjected a location. It has to be here. There's nothing in the patent that says that this communication device has to be here. And the best evidence of that is what we said in connection with the Goldfinger patent. And in the Goldfinger patent, we specifically said that our invention is different than Goldfinger. And in Goldfinger, we specifically said, quote, Goldfinger is different because, quote, it has a central server, close quote. We're different because our situation is addresses on individual peers. Slow down a little bit, counsel. What portion of the prosecution history are you working on? This is A1254 is the number in your appendix. And I'm sorry, on 1254, what is the sentence you're referring to? Yes. The third paragraph down, it says, and I'll read it, the one that begins in particular. Wait, on page 1254, okay, got it. Got it. In particular, well, shall I read it louder? Okay. So when Scott says there's nothing to indicate that, that's wrong. Here's a situation where we said, no, we're different than this. Here's a situation where there's a central server that's off the path, and we're still different. And if you think about it, what we said elsewhere is consistent with that. So, for example, when we, when it came time to. So Goldfinger is not a central server located between the two communications. Correct. Goldfinger is a central server that's off the path. And so we're saying we're different than that. Therefore, that shows you that the court's construction must be wrong. And I think it's very important to realize what we're saying about this in the context of the problem to be solved. This is a situation where we have IP addresses that are constantly changing. And when those addresses are constantly changing, you have a problem with a centralized central server type system. Because if that system goes down, if that central server has a problem, all communications cease. So when do those communications cease? That problem exists whether it's on the path or if there's a central server on the path, whether there's a centralized server off the path. But the problem when the court makes this narrow interpretation and narrows it to on the path, it marginalizes the problem, the concern about the problem we're trying to solve. It basically says, wait a second, it doesn't recognize we're trying to avoid central servers whether on or off the path. And that's why that introduction of this along the path is an extraneous element that's incorrect and belied by the problem to be solved. And if you go look at the prosecution history, it's consistent with that. The inventors in the course of the prosecution history didn't make statements such as, well, what really matters whether it's on the path or whether it's a central server off the path. That's not what was being said. What was being said was that we are having a situation where this is a peer-to-peer communications network. And that's what the situation was. It was more of a global sense in which they were using it. And in fact, if you look at what we said, for example, in the Pettis reference, in the course of saying that this is a peer-to-peer system, we talk about that in the course of that's why we have this language established in a direct communication link, because this was out of central server concept that's been invoked. The specification is also consistent. Whenever we use the word something like central server, it may be in the course of a central server such as an intermediary, but it will say in one aspect we will use it as sort of this along-the-path device, this intermediary sense. Or it will say in a particular environment, you may see this particular situation. But in other places in the spec, it's agnostic as to whether there's a location that matters or whether the location doesn't matter. So from that standpoint, we can say here we go. Yes, Ron. Thank you. Good morning. May it please the Court. My name is Andrei Iancu from Irela and Manila. On behalf of Skype and eBay, the defendants at the lease. Let me begin first by addressing a point Mr. Cook made in his opening remarks about the goldfinger reference. First of all, I should just note for the record that Peer did not raise the goldfinger reference below, did not raise it in its opening brief on appeal. The first time this appeared was in their grave brief. But nevertheless, on the substance, if we actually look at the page Mr. Cook cited to the Court at A1254, we see that the applicant did not distinguish goldfinger with respect to the direct communications link at all. It has nothing to do with the direct communications link. In fact, reading the very next paragraph, we see the basis for the applicant's distinguishing remarks regarding goldfinger. And it has to do with other features in the patent, the registry and the addressing and the network access devices. Nothing to do with the direct communications link. Second point regarding goldfinger, it is simply incorrect for Mr. Cook to say that goldfinger is a central server. It may or may not be. Goldfinger itself simply does not use the word central anywhere. The goldfinger reference is simply irrelevant to the key issue in this case. Now, let me turn to the direct communications link limitations. Yes, but counsel, if I read A1254 the way opposing counsel suggests, then a direct communication link, it seems to me, and they're talking about Plan 1 and 18, would allow for a registry located at the user network access device to be accessed to obtain the IP address and then come back down so that a peer-to-peer communication could occur. Is that right? Is that consistent with your reading of this? Yes. Right. So basically what they're talking about, let me also divert for just a second. This is in the CIP. This is for the second patent to CIP. This specific communication comes up in 2004, years later, and it's after actually the accused device has been introduced into the market. But it is consistent with other statements in the overall file wrapper. It is the actual location or addressing feature or functionality of this patent resides in the registry. So if an address has to be obtained, you go to the registry. It is off the path, and the registry transmits the addressing, and then the direct communication can take place without any addressing or location functionality taking place on the path. It is entirely consistent with the district court's construction. So the registry is not, in your mind, between the two devices? The registry is certainly not between the two devices. The key observation that this report made, which is correct, is that the location functionality and the communication functionality are separated. The location functionality is off the path, and we see this in the patent. If we look, for example, at the 6 to 5 patent, the original patent, at column 6, lines 53 and 54, it says that the messaging or the actual communication, quote, do not flow through the registry, close quote. This is precisely what the district court has found. In other words, the location functionality, the addressing, does not flow through the communication path. It is not in the path of the communication, just like the district court has found. Pierre is urging us to see this as a communication without the use of a central server. As I read through the specification, I'm left with the dominant impression that that central server is what they're referring to. How do you distinguish those multiple references to the central server in the specification? The central server that's addressed is actually in the background section of the patent, when it references the prior art. There is one and only one type of prior art that is distinguished in the background section of the patent, and that is the hub prior art, which both parties try to illustrate in their briefs, page 7 of the appellant's brief, page 11 of our blue brief. The central server that's referenced in the patent talks about a server that forwards communications. It is in the path of the communication, and it is precisely the type of server or intermediary that the district court tried to exclude. So the district court looked at what the patentee tried to overcome, the prior art the patentee tried to overcome, and expressly excluded it from the definition, which this court has endorsed in prior cases as an appropriate way to do complaint construction. I'm confused. Maybe you answered Joe Trader's question and I missed it. But the patent specification at column 2, lines 20 through 23 says, it would be useful, therefore, to have a method of communicating that does not require a central server and is executable across multiple platforms. It does, like Joe Trader, I see. We're on to column 5, eliminate the need for a specialized server. Excuse me, I interrupted you. Go ahead. I wanted to add to your point. Yeah, so let me address both of those points. At column 2, that is the one sentence that Peter relies on. And it comes, taken out of context by itself, it could be read broadly. But it is not, it should not be read out of context. It comes after a column and a half. But isn't the context the avoiding the single point of failure problem? Yes. Okay. Well, a single point of failure would be present in Gadol or present in the other anticipation prior art. Whether the central server is located between or located adjacent to and used as a resource, either way, it seems to me you're going to have a single point failure problem. And that's clearly what they're trying to overcome. Well, the single point of failure is with respect to the direct communications link. The claim term is direct communications link, not direct addressing or direct location link. So the single point of failure is with respect to the actual communication. If the address directory, if the registry fails, for example, that's not relevant to the communication link itself. The computers themselves, the communicate, actually have... Well, we dispute that that actually represents the goal, but... Okay. Okay. Isn't there a single point of failure? If you actually look at the communication link itself, which is at the bottom, whether the server at the very top fails, it is irrelevant for the actual communication, which is the bottom line. The computers might already have the address. I'm sorry. Except I said, except you wouldn't have an address, and you're presuming they already have it. They've got it before, or they have it... Right before they fail. So it's an important timing issue with regard to failure. They have it from whatever other functionality. They could have it in cache. They could have it from all kinds of different, for all kinds of different purposes. What we have to keep firmly in mind, though, is that the claim term at issue here is direct communication link, which is only the bottom line that you are looking at on that figure. It is not the addressing. The addressing is supplied by the registry, which is a different claim term, and not relevant to the single point of failure, which comes... So maybe you would analogize and say something like a single point of failure could be a power outage. Well, the whole... Irrelevant to the direct communication link, right? That's sort of what you're saying. The registry fails. That's irrelevant to whether the direct communication link has a single point of failure. Precisely. Precisely. Now, if we look at the rest of the specification or the rest of the record, it does... it talks about without intermediaries much more broadly. It doesn't talk about central servers. So if we look, for example, in the patented column... About that column 5 reference, about line 7. Yeah. So... Without the need for a specialized server. Sure. Without the need for a specialized server. It certainly doesn't say central server. What they mean is, without the need for this hub type of a server that actually forwards communications. And we see that at column 2, lines 20... Sorry, 33 through 34, without intermediaries, such as servers. And it's in the file wrapper as well, all over the place, including A717. The point is that the server is just an example of the intermediary that is excluded. Let me address something that Judge Moore, I believe, asked a little bit earlier. The registry itself, which handles the addressing... And we see that in the claims and in the patent, the specification. The registry itself can be anywhere. The registry is on a network access device. If we look at claim 14, for example, it says that the registry is on one of the access devices. Or in the patent at 453 to 55, quote, a registry can reside in any network access device, close quote. The construction of network access device is not on appeal. And there is no dispute about it. The construction of network access device is, quote, any device that provides communication on an electronic communications network, close quote. Any device. So the registry, when we're talking about the functionality for location or addressing, can be on any device on the network. It can be, but that's a permissive. That doesn't necessarily limit the whole invention, does it? That's right. It just shows that there is no reason to limit the invention or to limit some other term, like direct communications link, to a central server. That is precisely my point. If there are no other questions, I will conclude by urging the court to affirm the construction for direct communications link. And as a result, affirm the judgment. And reject Pierce-Challenging to the remaining terms. And enter the entire question into the effort. Thank you. Thank you. Very briefly, with respect to the Goldfinger reference that was not being raised before, the court should be aware that what matters is, what we're quickly doing is, back up, that it was not raised until the grain brief doesn't matter. The law is clear, such as the interactive gift case. All we were doing now is pointing to a different part of the record. So for that example, the interactive gift case, the court said, well, you can point to a different part of the record whenever you want. The prosecution used to hear. We're just pointing to different parts of the stuff that's evidence before the court. So the fact that it's in the grain brief for the first time doesn't matter in the law. The second thing is that, from what I can tell, every example that Mr. Iancu gave the court was a particular example of one embodiment. So for example, the fact that somewhere in the spec, it says, it suggests something along the path here. Or the fact that there's something in the prosecution history that says along the path here. It doesn't say along the path. It talks about that sort of architecture. It's not limiting. All right? All that shows is that's an example of one of the kinds of situations in which a central server could be set up. That's all. And at the end of the day, that's all his remarks really go to. And the thing that's impossible to get over is this, if there's any clarification that's needed, the thing that's impossible to get around is this gold finger reference. Because that refutes exactly what the court did wrong. Thank you very much.